IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JENNIFER FAIRCHILD,

        Plaintiff,                                            Case No.: 3:12-CV-387

vs.

COMMISSIONER OF                              District Judge Thomas M. Rose
SOCIAL SECURITY,                             Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED.**

This is a Social Security disability benefits appeal. Plaintiff was previously granted disability benefits as of January 19, 2011. The limited inquiry in this appeal is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not disabled prior to January 19, 2011 and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI") before that date. This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), the administrative record (doc. 7), and the record as a whole.[2] For the reasons that follow, the Court finds the ALJ's selection of January 19, 2011 -- as Plaintiff's disability onset date -- supported by substantial evidence.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number. Additionally, Plaintiff's pertinent medical records have been adequately summarized in her Statement of Errors and the administrative decision, *see* doc. 9 at PageID 1583-93; PageID 88-97, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

# I.

**A. Procedural History**

Plaintiff filed for DIB on April 2, 2009, alleging a disability onset date of June 2, 2007; additionally, Plaintiff filed for SSI on October 3, 2008, alleging a disability onset date of July 23, 2007. PageID 227-32. Plaintiff claims she is disabled due to a number of impairments including, *inter alia*, muscle weakness of the upper and lower extremities; headaches; neuropathy with arthritis; and depression. PageID 167-71.

After the initial denial of her applications, Plaintiff received a hearing before ALJ Thomas McNichols on March 30, 2011. PageID 83-101. ALJ McNichols issued a partially favorable decision on April 19, 2011, finding Plaintiff disabled with a disability onset date of January 19, 2011. PageID 99. Specifically, ALJ McNichols' findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012;

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR §§ 404.1571 *et seq.*, and 416.971 *et seq.*);

3. Since the alleged onset date of disability, June 2, 2007, the claimant has had the following severe impairments: muscle weakness of the upper and lower extremities, with left-sided pain; headaches; neuropathy with arthritis, possibly secondary to gastric bypass; and depression (20 CFR §§ 404.1520(c) and 416.920(c));

4. Since the alleged onset date of disability, June 2, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that, prior to January 19, 2011, the date the claimant became disabled, the

        claimant had the residual functional capacity [("RFC")][3] to perform sedentary work as defined by 20 CFR §§ 404.1567(a) and 416.967(a) except that she could never crouch or climb ladders, ropes, or scaffolds, and she could occasionally climb stairs, balance, stoop, kneel, or crawl. She was unable to perform work on uneven surfaces or perform repetitive use of foot controls on the left, and she needed to avoid exposure to hazards. She was further limited to simple, 1- or 2-step tasks (requiring little, if any, concentration) that were low stress in nature (defined as no production quotas and no direct dealing with the general public);[4]

6. After careful consideration of the entire record, the undersigned finds that, beginning on January 19, 2011, the claimant has had the RFC to perform considerably less than a full range of sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) and has been "disabled" pursuant to SSR 96-9p and 201.00(h);

7. Since June 2, 2007, the claimant has been unable to perform any past relevant work (20 CFR §§ 404.1565 and 416.965);

8. Prior to the established disability onset date, the claimant was a "younger individual age 18-44." The claimant's age category subsequently changed to a "younger individual age 45-49" (20 CFR §§ 404.1563 and 416.963);

9. The claimant has at least a high school education and is able to communicate in English (20 CFR §§ 404.1564 and 416.964);

10. Prior to January 19, 2011, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules [("the Grid")] as a framework supports a finding that the claimant is "not disabled" whether or not she has transferable job skills. Beginning on

---

[3] A claimant's RFC is the most physical exertion a claimant can perform in the workplace despite his or her impairments and any related symptoms, such as pain. 20 C.F.R. §§ 404.1545(a) (DIB), 416.945(a) (SSI). The assessment is based on all relevant evidence in the record and the claimant's ability to meet the physical, mental, sensory, and other requirements for work as described in 20 C.F.R. at §§ 404.1545(b), (c), and (d) (DIB), and 416.945(b), (c), and (d) (SSI). The remaining citations herein will identify the pertinent DIB citations with full knowledge of the corresponding SSI provisions.

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy, depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or…sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

        January 19, 2011, the claimant has not been able to transfer job skills to other occupations (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

11. Prior to January 19, 2011, considering her age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR §§ 404.1569, 404.1569a, 416.969, and 416.969a);

12. Beginning on January 19, 2011, considering her age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1560(c), 404.1566, 416.960(c), and 416.966); [and]

13. The claimant was not disabled prior to January 19, 2011, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

PageID 85-100 (brackets and footnotes added).

    Thereafter, the Appeals Council denied Plaintiff's request for review, making ALJ McNichols' finding -- that Plaintiff was disabled as of January 19, 2011, but not before -- the final administrative decision of the Commissioner. PageID 59-61; *see Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). This timely appeal followed. *See Cook v. Comm'r of Soc. Sec.,* 480 F.3d 432, 435 (6th Cir. 2007).

    **B. Plaintiff's Hearing Testimony**

    At the administrative hearing, Plaintiff testified before the ALJ that she is 46 years old and weighs 195 pounds. PageID 113-14. Plaintiff lives with her daughter. PageID 114. She has a high school education, completed some college courses, and has cosmetology training. PageID 117. Plaintiff stated she stopped working as a teacher's aide in June 2007, and has not attempted work since. PageID 117-18.

    Plaintiff testified that she cannot work due to a number of conditions including, *inter alia*, a history of seizures; left hip pain; arthritis; depression; and complications due to gastric bypass

surgery. PageID 118, 120-21, 123-30, 137-38. Plaintiff testified that she takes medication for seizures, which has controlled the condition and kept her from suffering a seizure in over a year. PageID 118. She has 2 plates and 17 screws in her left hip resulting from a 1995 car accident. *Id.* Plaintiff stated she suffers from arthritis and bone spurs, and that her hip pain has worsened "over the years." *Id.* Plaintiff testified that she receives treatment from a pain specialist and sometimes uses a cane for mobilization. PageID 121.

Plaintiff testified she can walk half a block, stand for five to ten minutes, and sit continuously for one hour. PageID 139. She stated that "on a good day" she can lift a gallon of milk and climb steps with the assistance of handrails. *Id*. Plaintiff testified that she washes dishes, vacuums, sweeps, does laundry, and gardens. PageID 141-42. She occasionally goes to the grocery store and to church. PageID 142. She is able to visit relatives and friends, and has been to the movies in the last year. PageID 143. Plaintiff is able to bathe, groom, and dress herself. PageID 145.

Plaintiff also testified to her mental health issues. PageID 130-33. She stated she suffers from anxiety attacks and "severe depression." PageID 131. Plaintiff attends counseling once every other month, sees a psychiatrist once every three months, and a neurologist twice a year. PageID 132-34, 148-49.

### C. Vocational Expert Testimony

William Bronik, a vocational expert ("VE"), also testified at the hearing. PageID 151-57. The ALJ proposed a series of hypothetical questions involving Plaintiff's RFC to the VE. PageID 152-54. In response to the ALJ's hypothetical questions the VE testified that such a person would retain an RFC for light work with the following limitations: no climbing of ropes, ladders or scaffolds; no crouching; no work on uneven surfaces; no exposure to hazards; only

occasional climbing of stairs, balancing, stooping, kneeling, and crawling; low-stress work with no direct interaction with the public; and work limited to simple one- or two-step tasks. PageID 153-55. The VE testified that, although Plaintiff could no longer perform her past relevant work, she could perform 12,000 jobs in the regional economy at the light level, and 3,500 jobs at the sedentary level, for a total of 15,500 positions in the regional economy. PageID 154.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where

that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB or SSI, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economy. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is

"disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### C. Disability Onset Date

Once a finding of disability is made, the ALJ must determine the onset date of disability. *Key*, 109 F.3d at 274. "The onset date of disability is the first day an individual is disabled as defined by the [Social Security] Act and the regulations." SSR 83-20, 1983 WL 31249, at *1. Factors relevant in determining the onset date of disability include the claimant's allegations, work history, and medical evidence of record. *Id*. The Commissioner is to evaluate these factors together when arriving at the onset date. *Id.*; *see also McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 835 (6th Cir. 2006).

### III.

On appeal, Plaintiff challenges the established disability onset date of January 19, 2011. PageID 1582. In support of her argument that the ALJ should have chosen an earlier onset date, Plaintiff argues the ALJ erred by: (1) failing to give proper weight to the opinions of her treating physicians; (2) failing to consider her impairments in combination; and (3) failing to correctly assess her credibility and in-person presentation at the administrative hearing. PageID 1594-1601. For the reasons that follow, the Court disagrees.

### A. Treating Sources

In assessing the medical evidence supporting a claim for disability benefits, the opinions of treating physicians are generally entitled to controlling weight. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Nevertheless, a treating physician's statement -- that a claimant is disabled -- is not determinative of the ultimate issue of disability, which is left to the ALJ. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A treating physician's

opinion is only to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and not inconsistent with other substantial evidence of record. *Id.*; *Landsaw v. Sec'y of H.H.S.*, 803 F.2d 211, 213 (6th Cir. 1986). The ALJ may properly reject a treating physician's opinion that does not meet these standards. *See* 20 C.F.R. § 404.1527(d)(2). If the opinion of a treating physician is not accorded controlling weight, the ALJ must apply certain factors -- including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the physician's specialization -- in determining the level of weight to give the opinion. *Wilson,* 378 F.3d at 544.

Plaintiff argues the ALJ erred by not giving controlling weight to the opinions of her treating physicians, K.B. Reddy, M.D. and Deborah Miller, M.D.; and her clinical social worker, Randi Rothman, M.S.W., L.S.W.[5] PageID 1598.

**1. Dr. Reddy**

Plaintiff began treatment with Dr. Reddy at the Dayton Pain Center on April 8, 2008. PageID 1517. Thereafter, Dr. Reddy administered various treatments related to Plaintiff's hip and arthritis pain. *See* PageID 544-59, 1518. Progress notes from Dr. Reddy show decreased lumbar spine movement, general antalgic gait, and pain in the hip and sacroiliac joints. PageID 544-59. However, such records do not provide an RFC assessment before January 19, 2011. *See, e.g.*, progress note dated March 18, 2009 at PageID 1108 (no RFC finding); progress note

---

[5] Typically, the ALJ is not required to treat the opinions of licensed clinical social workers with the deference that is due an "acceptable medical source." 20 C.F.R. § 404.1513(a). However, in this instance, Plaintiff's treating psychiatrist, Esam Alkhawaga, M.D. signed off on the statements given by Ms. Rothman, thus making the statements an opinion from an acceptable medical source. *Id.*; *see* PageID 1386-96; *see also Goins v. Astrue*, No. 4:07-cv-84, 2008 WL 4066095, at *3 (W.D. Ky. Aug. 28, 2008) (finding the ALJ erred by failing to treat a medical statement with deference when the claimant's therapist's diagnosis was signed by claimant's treating psychiatrist).

dated April 15, 2009 at PageID 1161 (no RFC finding); progress note dated July 16, 2009 at PageID 1086 (no RFC finding).  In December 2010, a few weeks prior to the established disability onset date, Dr. Reddy diagnosed Plaintiff with myofascial pain syndrome.[6]  PageID 1126.  This diagnosis was followed by the January 19, 2011 assessment by Dr. Reddy, finding Plaintiff unable to perform even sedentary work on a sustained basis due to "numbness and tingling in her bilateral hands and chronic pain which would increase with repetitive movements and lifting."  PageID 1527-31.  This assessment was based upon an in-person examination and Plaintiff's medical history.  PageID 1527.

   2. **Dr. Miller**

Dr. Miller served as Plaintiff's primary care physician from 2007 onward.  PageID 1211.  On April 8, 2010, Dr. Miller completed a Basic Medical Form for the Ohio Department of Job and Family Services.  PageID 1215-16.  Dr. Miller opined that the Plaintiff could not lift more than 5 pounds, could not stand or walk more than 10 minutes at a time, and could not sit for longer than 15 minutes.  PageID 1215.  She also opined that the Plaintiff was markedly limited in her ability to push, pull, bend, and reach.  PageID 1216.

   3. **Social Worker Rothman**

Social worker, Randi Rothman, began a treatment relationship with Plaintiff in 2008, treating Plaintiff for anxiety and depression.  PageID 1385.  In response to a request for Plaintiff's RFC, Ms. Rothman opined in June 2010 that Plaintiff would have difficulty performing several work-related activities, but ultimately concluded that Plaintiff displayed only "moderate" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; and

---

[6] Myofascial pain syndrome is a dysfunction of the masticatory apparatus related to spasm of the muscles; symptoms include muscle tenderness. *Stedman's Medical Dictionary* 1907 (28th ed. 2006).

"moderate" deficiencies in concentration, persistence, and pace.[7] PageID 1392-93. Plaintiff's treating psychiatrist, Dr. Alkhawaga signed off on this assessment. PageID 1393.

### B. The ALJ's Established Onset Date is Supported by Substantial Evidence

The ALJ's decision to adopt Dr. Reddy's assessment (and thus the January 19, 2011 disability onset date) is supported by substantial evidence. The ALJ engaged in a careful review of the record to ascertain whether Plaintiff's medical history supported a finding of disability prior to January 19, 2011. *McClanahan*, 474 F.3d at 835. In doing so, the ALJ cited treatment notes from Dr. Reddy that reported normal assessments of Plaintiff's capabilities, and only moderate impairments, prior to Dr. Reddy's January 19, 2011 disability determination. *See* PageID 545, 1105, 1130. The ALJ gave Dr. Reddy's opinion appropriate weight as Plaintiff's treating physician. *McClanahan*, 474 F.3d at 839-40 (holding a treating physician's examination date is an appropriate disability onset when the overall evidence of record supports a non-disability finding before that date).

In his opinion, the ALJ reasonably pointed to assessments from both treating and examining physicians of Plaintiff's capabilities -- demonstrating a full range of motion, no swelling, and normal gait and coordination -- in the time period preceding Plaintiff's January 19, 2011 disability onset. *See, e.g.*, PageID 442, 893-94, 1186, 1222, 1415, 1509. This evidence includes a June 2009 report, ordered by Dr. Reddy at Miami Valley Hospital, that found Plaintiff had "normal alignment with good preservation of disk space height," as well as a March 2010 assessment by radiologist William Protzer, M.D. finding Plaintiff's muscle strength was a "4+/5" and reporting her coordination, station, and gait as normal. PageID 1222, 1186.

---

[7] *See Sims v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 977, 980 (6th Cir. 2011) (noting that "moderate" limitations are "non-disabling").

Additionally, Plaintiff argues that Dr. Miller's RFC finding (and suggestion of an earlier onset date than January 19, 2011) is entitled to greater deference. PageID 1597. The Court disagrees. While the opinion of a treating physician is normally entitled to deference, the ALJ may refuse to grant controlling deference if the ALJ provides good reasons for doing so. *Wilson*, 378 F.3d at 544. The ALJ relied upon substantial evidence in finding Dr. Miller's opinion "is not entitled to controlling or deferential weight under the Regulations" and "is inconsistent with the other substantial evidence of record." PageID 95. To that end, the Court notes that Dr. Miller's opinion demonstrated internal inconsistencies, inconsistency with the record as a whole, and Dr. Miller's reliance on Plaintiff's subjective complaints when reasons existed for questioning Plaintiff's reliability. *Blakely*, 581 F.3d at 406-07, *see also Thomas v. Comm'r of Soc. Sec.*, No. 3:03-cv-5321, 2004 WL 1559535, at *2 (6th Cir. July 9, 2004) (holding an examining physician's opinion was properly rejected where that opinion was based in part on the claimant's subjective complaints). The Court finds the ALJ's decision is supported by substantial evidence, as he conducted a thorough review of the case record and reasonably explained his reasons for failing to give controlling weight to Dr. Miller's opinion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

Finally, Plaintiff argues the ALJ erred in rejecting the opinion of Ms. Rothman as Plaintiff's treating source. PageID 1598. However, the ALJ states that he gave "some weight to the opinions of the claimant's treating sources at TCN [Plaintiff's mental health clinic]." PageID 97. The ALJ relied on the progress notes and June 2010 assessment by Ms. Rothman in making his determination. *Id*. He reasonably and correctly stated that her "assessment that the claimant experiences no more than moderate impairment in the major areas of work-related mental functioning are consistent with and supported by the objective findings." *Id*. The ALJ also

adequately assessed and afforded some deference to the conclusions of Ms. Rothman in establishing Plaintiff's disability onset date, as far as these conclusions were consistent with the overall evidence of record. *Blakely*, 581 F.3d at 406 (holding that it is improper to give an opinion controlling weight simply because it is the opinion of a treating source if the opinion is inconsistent with other substantial evidence of record). The ALJ provided good reasons for not granting complete deference to Ms. Rothman's responses -- namely, that Plaintiff's condition was assessed as stable and/or under control on multiple occasions by Ms. Rothman; Ms. Rothman only assessed Plaintiff as having moderate impairments; and Plaintiff had never been psychiatrically hospitalized. *Wilson*, 378 F.3d at 544; PageID 97. The ALJ's opinion regarding Ms. Rothman's assessment is therefore supported by substantial evidence.

### C. Combination of Impairments

The Social Security Act requires that all impairments, regardless of their severity, be considered in combination. 42 U.S.C. § 423(d)(2)(B); *see also* 20 C.F.R. § 404.1523. The Sixth Circuit has held that disability may result from multiple impairments which, when considered alone, would not constitute a disability. *Loy v. Sec'y of H.H.S.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

A review of the ALJ's opinion demonstrates that he discussed the effects of Plaintiff's impairments separately and in combination when formulating his disability determination. PageID 83-100. The Court notes that the ALJ consistently referred to Plaintiff's impairments and symptoms in the plural, and referred to her combination of impairments in determining that she was disabled as of January 19, 2011. *See, e.g.*, PageID 89 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically-determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ also referred

to both Plaintiff's physical and mental impairments discussed by Dr. Reddy in her assessment as support for the conclusion that Plaintiff was disabled as of January 19, 2011. *See* PageID 98. Additionally, the ALJ discussed Plaintiff's multiple impairments extensively throughout his opinion, and considered all of those impairments in combination, as well as the combined effect of Plaintiff's symptoms in his opinion. PageID 88; *see Gooch v. Sec'y of H.H.S.*, 833 F.2d 589, 592 (6th Cir. 1987) (holding that if each element of the record is discussed individually, it demonstrates that the totality of the record was considered). The ALJ carefully considered the entire record in making his RFC finding, and accounted for both physical and mental limitations.

### D. Credibility

Finally, there was no error in the ALJ's credibility analysis. PageID 94-97. It is for the ALJ, and not the reviewing Court, to evaluate Plaintiff's credibility. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 237 (6th Cir. 2007). Accordingly, an ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1234 (6th Cir. 1993). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [a claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

During the hearing, Plaintiff testified that she could do an array of household chores, care for herself, and visit with friends and family. PageID 139-47. Additionally, the ALJ observed that Plaintifff was "able to closely and fully attend the hearing proceedings . . . . [She] appeared to have no difficulty sitting or rising, and did not appear to be in pain or any other distress." PageID 94. The ALJ also cited proof in the administrative record of Plaintiff's social activities in making his credibility determination. These included Plaintiff reporting that she had driven to

Cincinnati in May 2009, weeded her garden in May 2010, went out with friends in June 2010, and attended a cookout in October 2010, among others. PageID 1264, 1420, 1534, 1543.

The ALJ's determination -- that Plaintiff's allegations were inconsistent -- is reasonable and supported by substantial evidence. The ALJ provided sound reasoning for partially discrediting Plaintiff. *See* PageID 94; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (noting that an ALJ may consider "household and social activities engaged in by the claimant" in evaluating a claimant's credibility). Plaintiff's credibility may properly be discounted to "a certain degree . . . where an [ALJ] finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* at 531. In this case, the ALJ found Plaintiff's testimony only somewhat credible. The Court finds the ALJ's assessment and credibility analysis supported by substantial evidence.

## IV.

It is not the Court's role to sift through the facts and make a *de novo* determination regarding the onset of a claimant's disability. The ALJ, not the Court, is the finder of fact. *Siterlet v. Sec'y of H.H.S.*, 823 F.2d 918, 920 (6th Cir. 1987). So long as the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 401. If substantial evidence supports the ALJ's resolution of the disputed facts, the Court must affirm the ALJ even if the Court would have resolved the disputed facts in Plaintiff's favor had it been the trier of fact. *Nunn v. Bowen,* 828 F.2d 1140, 1144 (6th Cir. 1987).

For the foregoing reasons, the Court finds Plaintiff's assignments of error unmeritorious, and further finds the ALJ's non-disability determination, prior to January 19, 2011, supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's determination -- that Plaintiff was disabled as of January 19, 2011, but not before -- be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED** on the docket of this Court.

January 9, 2013                                                          **s/ Michael J. Newman**
                                                                          United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).